RANSON v. SNYDER, et ux.

No. 39317 November 15, 1954 75 So. 2d 738

*Arnaud Lopez, Albert S. Johnston, Jr., Howard A. McDonnell,* Biloxi, for appellant.

*Amy Burkett,* Ocean Springs, for appellee.

Roberds, P. J.

The ultimate question for determination herein is whether or not, under the notes and trust deed hereinafter set out, appellees contracted with appellant to pay him as much as twenty percent interest per annum on money borrowed by appellees from appellant. And, in the last analysis, that depends upon whether the acceleration clause in the trust deed renders the contract usurious to the extent of twenty percent interest per annum. The agreement was to pay more than eight percent, and, as we construe the contracts and the evidence, less than twenty percent, unless the acceleration clause in the trust deed was an agreement, under the circumstances here, to pay as much as twenty percent per annum. It is not claimed appellant collected as much as twenty percent interest. Our usury statute provides that "If a rate of interest is contracted for or received, directly or indirectly, greater than twenty percentum per annum, the principal and all interest shall be forfeited, and any amount paid on such contract may be recovered by suit." Section 36, Mississippi Code 1942. The chancellor held that the effect of the acceleration clause was an agreement to pay twenty percent, or more, and he rendered a decree adjudging appellees entitled to recover all they had paid to appellant.

On November 1, 1949, Ranson loaned to Mr. and Mrs. Snyder the principal sum of $18,000.00. The Snyders executed therefor 72 notes for $400.00 each, one note being due December 1, 1949, and one the first day of each month thereafter. To secure this indebtedness the Snyders executed a deed of trust on three small tracts of real property located in Ocean Springs, Mississippi, and also a laundry building located upon one of the lots and all machinery, equipment, etc., connected with the operation of the laundry. The trust deed provided that

in case of default in payment of any of the notes for a period of fifteen days the remaining notes ''by acceleration,'' would become due and payable.

The Snyders paid the first five notes. That included the note due April 1, 1950.

At this time the Snyders were in rather bad financial condition and were in danger of having to close down their laundry business. Mr. Snyder approached Mr. Ranson to procure another loan. On April 4, 1950, Ranson loaned the Snyders $2,000.00 more. As evidence of that debt the Snyders executed to Ranson 66 notes each for $50.00, one note due the first day of each month thereafter. This indebtedness was secured by the November 1st deed of trust, that instrument providing that it was security for any other indebtedness owing by the mortgagors to the mortgagee before payment of the original debt.

Snyder paid the $400.00 notes and the $50.00 notes to and including May 1, 1951.

In the spring of 1951 Snyder owed for machinery, equipment, etc., used in his laundry business. He approached Ranson about reducing the monthly payments to him. They then agreed that instead of the payments being $450.00 per month they would be $250.00 monthly until Snyder should get into such financial condition as that he could resume paying $450.00 per month. He never did resume such payments. He made the $250.00 payments from June 1, 1951, to October 1, 1952. He also paid the note due December 1, 1952. That was his last payment. He also defaulted in payment of insurance premiums and taxes. In all he paid a total of $12,150.00.

At the instance of Ranson the property sold under the trust deed May 18, 1953, some five months after the payments ceased, at which sale it was purchased by Ranson for $10,000.00.

Two certified public accountants, one for appellees and one for appellant, testified that the rate of interest on both loans, according to the terms of the notes and

trust deed, aside from the accelerating clause, was greater than eight percent but less than twenty percent. And in reaching those conclusions they did not take into consideration the effect of the agreement reducing the payments from $450.00 to $250.00. While, if that fact is considered, the rate of interest would be reduced, yet it is evident the reduction would yet leave the contract rate greater than eight percent and less than twenty percent. It is evident, too, from the chancellor's opinion that he decided the twenty percent rate was brought about by the acceleration clause. So the deciding question in this case is whether the inclusion in the trust deed of the acceleration clause constitutes a contract to pay interest at twenty percent where, without such clause, the contract rate would be less than twenty percent. That question has not been decided by this Court.

 The Court has announced in several cases that the usury statute is highly penal and will be strictly construed against the party asserting usury, and that the burden is upon such a person to prove the existence of usury by clear, positive and certain proof. Morgan v. King, 128 Miss. 401, 91 So. 30; Yeager et al v. Ainsworth, et al, 202 Miss. 747, 32 So. 2d 548; Towers Underwriters, Inc. v. Lott, 210 Miss. 383, 49 So. 2d 701. However, this Court has intimated what its position would be on the stated question. In Great Southern Land Co. v. Valley Securities Co., 162 Miss. 120, 137 So. 510, the Court used this language: "If there had been an acceleration clause in the Land Company's mortgage, under Section 2170, Code of 1930, the Securities Company had the right to stop the foreclosure sale by tendering to the Land Company the amount of the overdue note alone, without attorney's fees, with trustee's fees and costs incurred."

 The general rule is stated in Anno. 84 A. L. R., page 1283, in these words: "By the great weight of authority it is held that the inclusion, in a contract to repay money, of a provision that, on default in the pay-

ment of the interest, or an installment of the principal, the entire indebtedness, including interest for the whole term or interest to the date of default, shall become due, does not constitute usury though the amount of such interest will exceed the legal rate. The excess interest, however, is penal, and can be neither collected nor retained.'' A great many authorities are cited supporting the quoted rule from various states, including England and the Supreme Court of the United States. As to forfeiting the unmatured interest, this Annotation, in another place, says ''But while the lender has the right to exercise his option of accelerating the maturity of the loan on a default of the borrower, he cannot collect the interest notes which are not yet due, since these notes are discharged by accelerating the maturity date of the loan.'' Some of the cases hold that the future interest can be collected without violating the usury law because default is the fault of the debtor and he has it within his power to prevent such default. However, the majority hold, as above stated, that future interest cannot be collected nor retained either because the future interest notes are discharged by the act of acceleration, or such future interest notes are without consideration.

The foregoing annotation is supplemented by another in 100 A. L. R. at page 1431, and the rule is there restated as above quoted, and some cases are there set out which hold that even though the acceleration provision is expressly contained in the interest notes such acceleration does not result in usury, the Court construing the excess interest as a penalty, since interest is a charge for use of money, and after the accelerated foreclosure there is no loaned money for which interest can be charged. Long Realty Co. v. Breedin, 175 S. C. 233, 170 S. E. 47; Union Central Life Ins. Co. v. LaFollette, 44 P. 2d 165; Tobin v. Holmboe, (Okla.) 45 P. 2d 716; Massel Realty Co. v. Hagan, 47 Ga. App. 532, 171 S. E. 239.

Later cases follow the stated rule. Supplemental Decisions A. L. R. Blue-Book, Permanent Vols. 1 and 2. We adopt the rule quoted above from 84 A. L. R.

 The wording of the decree indicates that the chancellor gave undue weight to the form in which the transactions between the parties hereto were closed. We look through the form — whether it be called amortization, capitalization, or some other name — to the substance. The substance is that Ranson loaned to the Snyders a total of Twenty Thousand Dollars; the Snyders got that sum of money, and the notes evidenced the repayment of that loan, with interest. Ranson did not withhold any money he agreed to lend the Snyders; the Snyders got the full use and benefit thereof. There was no discount, or withholding on the part of Ranson; no requirement for accumulation of a fund, deposited with a trustee or otherwise, with which to pay the notes. So, regardless of form, it was a loan of money for the use of which interest was to be paid, and all parties hereto recognize these essential facts. The interest amounted to more than eight and less than twenty percentum per annum according to the terms of the notes and trust deed, and, since the acceleration clause in the trust deed does not change that situation, the result is that Ranson forfeits all interest and the Snyders should repay the principal. The decree will be modified accordingly.

Since the Snyders may wish to pay the principal and redeem their property and there may be other equities to be adjusted between them we deem it necessary to remand the cause.

Affirmed in part, reversed in part and remanded.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.