GOLDBERG, Circuit Judge:
This bankruptcy case and two others decided today, Flournoy v. Century Finance Co., 577 F.2d 997, (5th Cir. 1978), and Flournoy v. General Finance Corp., 577 F.2d 994, (5th Cir. 1978), comprise twelve distinct causes of action raising similar issues under the Federal Bankruptcy Act, 11 U.S.C. § 1 et seq., and the Georgia Industrial Loan Act (“GILA”), Ga.Code Ann. § 25-301 et seq. In Sprouse, the instant case, we conclude that under GILA, a provision found in the security agreement portion of a loan contract providing for the acceleration of unacerued interest voids the contract notwithstanding the presence of a valid acceleration provision in the note portion of the contract. In Flournoy v. Century Finance Co., supra, we consider the applicability of Rules of Bankruptcy Procedure 13-307 and 13-308 and the equitable doctrines of estoppel and laches as they impinge on the filing of objections by the trustee to creditor claims automatically allowed under Bankruptcy Rule 13-307(b). *991 Finally, in Flournoy v. General Finance Corp., supra, we apply these holdings to six further causes of action raising similar issues.
In the instant case, General Finance Corp. (“GFC”) appeals from the district court’s determination that the acceleration clause contained in its security agreement with the bankrupt violated the Georgia Industrial Loan Act. After carefully considering the record and the applicable Georgia law, we affirm.
On July 29, 1975 the debtor, Ted A. Sprouse, and his wife, Beverly Sprouse, entered into a loan contract with GFC. The parties agree that this contract was governed by the Georgia Industrial Loan Act, which strictly regulates “the business of making loans of $3,000 or less.” Ga.Code Ann. § 25-302. The contract consisted of a promissory note and a security agreement, both of which contained acceleration clauses.
On November 10, 1975 Sprouse filed a voluntary petition for bankruptcy. At the first meeting of creditors, Sprouse objected to GFC’s claim, contending inter alia that the acceleration clause in the security agreement violated GILA. Both the bankruptcy judge and the district court agreed with Sprouse’s claim and ruled that the loan was null and void under Georgia law.
The Georgia Industrial Loan Act provides that a lender may not contract for any interest or charges not specifically authorized by the Act. Ga.Code Ann. § 25-316. It is well settled under Georgia law that unaccrued and unearned interest is not among the statutorily enumerated, allowable loan charges. Lawrimore v. Sun Finance Co., 232 Ga. 637, 208 S.E.2d 454, aff’g 131 Ga.App. 96, 205 S.E.2d 110 (1974); Wiggins v. Liberty Loan Corp., 143 Ga.App. 46, 237 S.E.2d 418 (1977); Bragg v. Household Finance Corp., 140 Ga.App. 75, 230 S.E.2d 55 (1976). Any loan contracts which provide for the acceleration of unaccrued interest in violation of GILA are null and void, Ga.Code Ann. § 25-9903, and any money loaned under such contracts cannot be recovered. Hodges v. Community Loan & Investment Corp., 234 Ga. 427, 216 S.E.2d 274 (1975).
In the contract at issue, the acceleration clause contained in the promissory note provides that
upon default and acceleration of maturity as provided below, unearned interest will be computed pro rata and refunded . . . [DJefault in paying any installment may be discussed with any present or future employer and shall, at the option of the holder thereof . . . , render the entire sum remaining unpaid at once due and payable, less required refund of interest portion of Finance Charge, (emphasis supplied).
This clause is valid under Georgia law because it provides for the deduction of unac-crued interest upon acceleration of the debt. See Wiggins v. Liberty Loan Corp., supra (provision that “On acceleration of the maturity of this Note for default Lender will rebate interest in proportion to the reduction in the loan term” validates acceleration clause); Bragg v. Household Finance Corp., supra (provision accelerating unpaid balance “less any required refund of interest” is valid under GILA). The acceleration clause contained in the security agreement, however, does not provide.for the refund of unaccrued interest:
[I]f debtor fails to pay any installment of said note when due, or fails to perform any of the covenants hereof, or makes default in any respect, or uses said property contrary to law, or if secured party feels insecure for any reason whatsoever, then all the installments of said note shall at the option of the secured party . become immediately due and payable, and secured party may take possession of and remove without liability said property without notice, demand, or legal process.
There is no question that an acceleration clause of this type, if contained in the note portion of the agreement, would void the contract under Georgia law. See Lawri-more v. Sun Finance Co., supra, 205 S.E.2d at 111 (acceleration clause in note providing *992 that “all installments due and payable” violates GILA). See also Blazer Financial Services, Inc. v. Dukes, 141 Ga.App. 663, 234 S.E.2d 149 (1977) (acceleration clause in note stating that default shall render “the entire unpaid balance due and payable” violates GILA). The issue on appeal is whether under Georgia law a different result is required by the placement of the invalid acceleration clause in the security agreement rather than in the promissory note or by the existence of a valid acceleration clause in the note portion of the contract.
Appellant first contends that by definition a security agreement cannot authorize the collection of interest upon default where the note does not provide for collection of interest. According to appellant, a “security agreement” can only “secure” an interest which has already been created in another instrument. This argument, though semantically ingenious, does not survive careful analysis. As Judge Alaimo points out in his thorough and well-reasoned opinion below, there exists no legal reason why a security agreement may not authorize the collection of interest upon default. It is clear that under Article 9 of the Georgia U.C.C., a security agreement may impose various charges, not found in the promissory note, in the event of default. See, e. g., Ga.Code Ann. §§ 109A-9-504, 506. The instant security agreement, for example, provides for payment by the debt- or of repossession, storage, and legal expenses, as authorized by the U.C.C., in the event of default. Were no acceleration clause contained in the promissory note, we have little doubt that a valid acceleration clause contained in the security agreement would be effective in establishing a legal basis for the collection of principal and accrued interest from a debtor in default. We thus reject the contention that the invalid acceleration clause is without effect solely by reason of its placement in the security agreement portion of the loan contract.[1]
Appellant next argues that Lawrimore and its progeny are limited to acceleration clauses contained in the note portion of contracts and do not apply to acceleration clauses contained in security agreements. It is true that none of the Georgia cases invalidating acceleration clauses involved a security agreement. However, the fact that the acceleration clauses at issue in the Lawrimore line of eases all happened to deal with promissory notes does not limit the reasoning of those decisions to such instruments. The statutory language of GILA refers to “loan contracts” and not merely “notes.” See, e. g., Ga.Code Ann. §§ 25-319, 25-9903, and nothing in the statute or its legislative history support the limitation proposed by appellant. Indeed, we have already noted that Ga.Code Ann. § 109A-9-203(2) expressly renders GILA applicable to security agreements otherwise governed by Article 9 of the Georgia U.C.C. Given our conclusion that acceleration clauses contained in a security agreement can have legal effect under the U.C.C., it necessarily follows that the public needs GILA’s protection against excessive charges whether these charges are embodied in a security agreement or a promissory note. We read the Georgia Industrial Loan Act to apply equally to both the note and security agreement portions of a loan contract.
Appellant’s final argument raises the most difficult legal question of this appeal. Appellant contends that since the acceleration clause in the promissory note requires that all unaecrued interest be returned to the debtor, while the clause in the security agreement says nothing specific about unaccrued interest, the two clauses should be considered as inconsistent provisions of a single contract, and, following accepted rules of contract construction, the clause in the promissory note should govern. Appellant correctly notes that under Georgia law, the construction which upholds a contract is to be preferred, Ga.Code Ann. § 20-704(4), *993 and the intention of the parties generally should prevail. Ga.Code Ann. § 20-702. See Bragg v. Household Finance Corp., supra, 230 S.E.2d at 57.[2]
While these rules of contract construction may be persuasive in other contexts, the policies of the Industrial Loan Act, as construed by the Georgia cases, require a stricter reading of the contract at issue here. The Georgia Supreme Court has observed that GILA must be strictly construed. Georgia Investment Co. v. Norman, 231 Ga. 821, 822, 204 S.E.2d 740, 741 (1974). The Court of Appeals in Lawrimore specifically refused to give effect to the following contractual language:
Any provisions of this instrument prohibited by the laws of this State shall be ineffective . . . without invalidating any other remaining provisions .
131 Ga.App. at 97, 205 S.E. at 110. The court concluded that to give effect to this provision would nullify the statute. Id. We believe that conclusion is equally applicable to the instant case.
The Industrial Loan Act was designed to protect debtors who are often unaware of their legal rights or complicated rules of construction. The relevant question under GILA is not simply whether a court would interpret the contract, when evaluated under general rules of contract construction, to allow the acceleration of unaccrued interest. We must also ask whether the lender might be able to employ certain provisions of the contract to exact illegal charges from unsuspecting debtors. It is naive to assume that every controversy culminates in litigation. The policies of GILA require us to consider the actual operation of the contract in the commercial world. We understand the Lawrimore court’s invalidation of the contract before it, notwithstanding the savings clause quoted above, as an example of such sensitivity to commercial reality. Even if the acceleration clause at issue in Lawrimore may have been ineffective as a matter of strict contract interpretation, absent invocation of GILA’s forfeiture remedy lenders might still be inclined to include such a provision in their contracts and attempt to utilize it to accelerate unaccrued interest in any case in which the borrower was ignorant of his rights. For example, if the creditor in the instant case accelerated the loan obligation, including unaccrued interest, under the provisions of the security agreement for reasons other than default in payment,[3] the debtor reading the security agreement might well believe that the creditor’s actions were within its contract rights. This is precisely the kind of situation GILA seeks to prevent. The severe penal sanction of loss of principal and accrued interest for violation of the prophylactic strictures of the Act, even in situations in which the creditor does not attempt to accelerate unaccrued interest, demonstrates a concern extending beyond the prevention of overreaching in any particular case. The creditor is admonished by the Act to draft its loan contracts in such a way that illegal charges will not be received either “directly or indirectly.” Ga.Code Ann. § 25-303. Under GILA, the contract’s potential for deceptive manipulation grasped by a creditor’s right hand may not be retracted by the left in time of challenge.
We thus conclude that GILA requires the contract to indicate clearly that unaccrued interest may not be exacted upon the acceleration of payments under any ac *994 celeration clause in the contract.[4] Because the acceleration clause in the security agreement does not so indicate, we hold that the contract in the instant case is null and void. In the interpretive desert inhabited by GILA, this holding will undoubtedly provide a tasty dessert for debtors. While creditors may find GILA’s forfeiture provisions to be monstrous, we are bound by Georgia law to give them effect. The judgment of the district court is therefore affirmed.
AFFIRMED.

. We also note that Georgia law recognizes the possibility that provisions in a security agreement could conflict with the Industrial Loan Act. The Georgia U.C.C. provides that GILA is applicable to security agreements and that, in the event GILA provisions conflict with the Georgia U.C.C., the Industrial Loan Act governs. Ga.Code Ann. § 109A-9-203(2).

. In Bragg the acceleration clause was qualified by the phrase “less any required refund of interest.” The Georgia Court of Appeals noted that while in a strict legal sense the loan company was not “required” to refund interest under the Act, “it [was] required not to accelerate unearned interest if it [was] to protect its recovery of principal and earned interest.” 230 S.E.2d at 57. The court concluded that the contract was valid because the lender had demonstrated an attempt at compliance with GILA, and the rules of contract construction favored the legal interpretation that upon default unearned interest would not be accelerated.

. We have noted above that the note provided for acceleration of payments only upon default in payment of an installment. The security agreement allows acceleration for other reasons as well.

. The Bragg case, discussed in footnote 2, supra, is distinguishable on this basis. There the limitation clause, “less any required refund of interest,” was “not as clear nor as concise as it might be,” 230 S.E.2d at 57, but it nonetheless was more than sufficient to put the debtor on notice that certain interest charges would be refundable under law. Moreover, the limitation provision immediately followed the acceleration clause and clearly was intended to modify it. Here, on the other hand, the language which purportedly modifies the acceleration clause in the security agreement is contained in a completely separate portion of the contract and does not expressly apply to the security agreement. The debtor is given no indication from reading the contract that he is entitled to deduct unaccrued interest in the event of a default under the provisions of the security agreement.