In re JOHNSON, Arlene J., Debtor.

Johnson, Arlene J., Plaintiff,

v.

Speedee Cash of Columbus, Inc., Defendant.

Speedee Cash of Columbus, Inc., Movant.

Bankruptcy No. 02–41260.
Adversary No. 02–4026.

United States Bankruptcy Court, M.D. Georgia, Columbus Division.

Dec. 6, 2002.

William A. Edwards, Jr., Columbus, GA, for Debtor.

Joy R. Webster, Macon, GA, Chapter 7 Trustee.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On November 29, 2002, the court held a hearing regarding the Motion of Speedee Cash of Columbus, Inc. ("Defendant") for Summary Judgment. At the conclusion of the hearing, the court took the matter under advisement. After considering Defendant's brief and uncontroverted Stipulation of Uncontested Facts, both parties' oral arguments, and the applicable statutory and case law, the court makes the following conclusions of law.

## FACTS AND PROCEDURAL HISTORY

The facts for the most part are not in dispute here. On January 20, 2001, Arlene J. Johnson ("Debtor") entered into a contract with Defendant pursuant to a title pawn transaction. Debtor pledged to Defendant the Certificate of Title to a 1992 Lexus 300 ES ("Lexus") in exchange for $1,000. The contract indicated that the pawn was for a period of thirty days, which could be extended in thirty-day increments if mutually agreed upon. However, the maturity date listed on the contract was March 21, 2001, a period of approximately sixty days. The first thirty days of the pawn contract were "free," after which the fee was 25% of the total loan amount per month. Additionally, the contract provided for a ten-day grace period after the maturity date during which Defendant promised not to sell the property and Debtor was entitled to redeem the property by paying the outstanding balance, plus any fees and charges incurred. Debtor did not pay Defendant in full by the maturity date. Instead, Debtor made payments and extended the pawn contract through January of 2002.

Debtor filed her first Chapter 13 petition on December 26, 2001. Pursuant to 11 U.S.C. § 362, an automatic stay was in effect. Defendant did not attempt to recover the Lexus while the stay was in effect. During the pendency of Debtor's first Chapter 13 case, Defendant did not receive any monies from Debtor or the Chapter 13 trustee. However, after Debtor's first Chapter 13 case was dismissed on

April 29, 2002 and the automatic stay was lifted, Defendant repossessed Debtor's Lexus using the self-help procedure allowed by Georgia law. Debtor had made no payment to Defendant since November 2001.

On May 31, 2002 Debtor filed her second Chapter 13 petition and subsequently filed this adversary proceeding. After an emergency hearing for turnover of the Lexus on June 3, 2002, the court ordered Defendant to return the Lexus to Debtor upon proof of full insurance naming Defendant as loss payee. By June 7, 2002, Debtor had paid $1,000 toward the balance due. On July 2, 2002, Defendant filed an answer and counter-claim. The parties proceeded with this adversary proceeding for final determination of the complaint and counter-claim. On October 15, 2002, Defendant filed the motion for summary judgment on the complaint and counter-claim that is currently before the court.

Defendant contends that it has shown that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Under the Georgia Pawnshop Act ("Act"), Defendant had all possessory and legal ownership rights as of the day of repossession. Therefore, Debtor had no right to bring the Lexus back into the bankruptcy estate. Pursuant to O.C.G.A. § 44–14–403(b)(3), Georgia law transferred ownership of the Lexus to Defendant when Debtor failed to redeem the car within the grace period. Defendant argues that the Lexus is not part of Debtor's estate and should be returned to Defendant.

Debtor argues that summary judgment should not be granted to Defendant for three reasons. First, Defendant has failed to prove that it is a licensed pawn dealer in the state of Georgia, which is required before Defendant is entitled to special treatment under the Act. Second, since the Act is in derogation of the common law, the Act must be strictly complied with before a pawn dealer can receive the special treatment provided for by the Act. The contract did not comply with the Act in two different ways: 1) the length of the initial contract was sixty days; and 2) the grace period listed on the contract was for ten days, not thirty days as required by Georgia law. Since the Act's contractual requirements were not strictly complied with, Defendant should not receive the favored treatment that pawn dealers typically receive under the Act. Third, the Act is in violation of the Federal Constitution because it does not afford adequate due process protections to Debtor.

### CONCLUSIONS OF LAW

Under Federal Rule of Civil Procedure 56, applicable to Bankruptcy proceedings under Bankruptcy Rule 7056, a party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56, FED. R. BANKR. P. 7056. The parties have agreed that there is no genuine issue of material fact.

In Georgia, common-law rights, such as the English common-law right to void a usurious contract, have been codified. *See generally Houser v. The Planters' Bank of Fort Valley*, 57 Ga. 95 (1876). In fact, in Georgia, the act of charging usurious interest rates has even been criminalized. *See* O.C.G.A. § 7–4–18. The Act allows Defendant to collect interest, charges, and fees on personal property pawns that would otherwise be considered usurious and criminal. *Compare* O.C.G.A. § 44–12–131 *with* O.C.G.A. § 7–4–18. Further, pawnbrokers are exempted from O.C.G.A. § 7–4–18. O.C.G.A. § 7–4–18(a). Rights created by statute in derogation of the common law must be "exercised in the

way which the [s]tatute prescribes, and in no other way...." *Persons v. Hight,* 4 Ga. 474 (1848); *see also Diggs v. Swift Loan and Finance Company, Inc.,* 154 Ga.App. 389, 391, 268 S.E.2d 433, 435 (1980). Therefore, the Act must be strictly complied with before Defendant would be entitled to summary judgment as a matter of law.

■ The contract between Debtor and Defendant does not comply with the Act in two ways. First, the contract is for approximately sixty days, twice as long as allowed for in the Act. *See* O.C.G.A. § 44–12–131(a)(1). While Defendant may have been trying to give Debtor, or all of its customers for that matter, a "break" by allowing the first thirty days to be "free," this contract term is in violation of O.C.G.A. § 44–12–131(a)(1). Defendant argues that the contract is for thirty days, with a renewal of thirty days. However, the contract is dated January 20, 2001, with a maturity date of March 21, 2001, making the contract length approximately sixty days. (*See* Aff. of Ron Meeks, Doc. 7, Ex. A).

Second, pursuant to O.C.G.A. § 44–14–403(b)(1), the grace period for pawn transactions involving automobiles is thirty days. O.C.G.A. § 44–14–403(b)(1). The contract only grants a ten-day grace period. (*See* Aff. of Ron Meeks, Doc. 7, Ex. A). Defendant argues that it gave Debtor the benefit of the thirty-day grace period. This argument is not persuasive on the Motion for Summary Judgment. Regardless of whether Debtor received more than the ten days stated in the contract, this contract term is in violation of O.C.G.A. § 44–14–403(b)(1). Defendant is not entitled to summary judgment as a matter of law because the contract is in clear violation of the statutory requirements for automobile title pawns.

Defendant's Motion for Summary Judgment is denied. An order in accordance with this Memorandum Opinion will be entered.